UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. _____

JANE DOE (B.V.),

     Plaintiff,

v.

CARNIVAL CORPORATION,
BIMINI SUPERFAST OPERATIONS LLC d/b/a
RESORTS WORLD BIMINI,
HILTON RESORTS CORPORATION,
JOHN DOE (ASSAILANT),
and XYZ CORPORATION(S),

     Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff sues Defendants and allege:

### PRELIMINARY ALLEGATIONS

1. The Plaintiff, JANE DOE (B.V.), is a citizen and resident of Georgia.

2. Defendant, CARNIVAL CORPORATION (hereinafter "Carnival"), is a corporation incorporated under the laws of Panama having its principal place of business in Miami, Florida.

3. Defendant, BIMINI SUPERFAST OPERATIONS LLC d/b/a RESORTS WORLD BIMINI (hereinafter "RESORTS WORLD BIMINI"), upon information and belief, is a corporation incorporated under the laws of the Bahamas having its principal place of business in Bimini, Bahamas.

4.   Defendant, HILTON RESORTS CORPORATION (hereinafter "HILTON"), is a duly licensed foreign corporation, authorized to transact business within the State of Florida, with its principal place of business as 6355 Metrowest Blvd., Ste. 180, Orlando, Florida.

5.   Defendant, JOHN DOE (ASSAILANT) (hereinafter the "Assailant"), is the individual employed by Defendants, CARNIVAL, HILTON, RESORTS WORLD BIMINI and/or XYZ CORPORATION(S) who sexually assaulted and/or raped the Plaintiff. The identity of the Assailant is unknown at this time.  However, Plaintiff will promptly serve discovery on Defendants to timely identify the Assailant; and if the Assailant is identified by name, Plaintiff will promptly amend the Complaint to add the Assailant's real identity.

6.   Defendant(s), XYZ CORPORATION(S), is included to represent the owner(s) and operator(s) of the subject excursion, insofar as such entity has a different name than the named Defendants herein.  In the event discovery reveals different or additional entities contributed to the ownership, operation, or management of the subject excursion, the legal names of those entities will be substituted for XYZ CORPORATION(S).

7.  Defendants, HILTON and RESORTS WORLD BIMINI have interrelated management, officers, directors and ownership with each other.

8.   At all material times, the resort and premises was and is owned, managed, maintained and operated jointly by HILTON and RESORTS WORLD BIMINI. As such, the Defendants are jointly responsible for the management, operation and maintenance of the Hotel, Resort and staff/employees for the sexual assault and/or rape of the Plaintiff, for the factual reasons alleged herein.

9.  At all material times, HILTON and RESORTS WORLD BIMINI regularly solicited business in the State of Florida, through Hilton, for travel to their resort facilities, including RESORTS WORLD BIMINI.

10. At all material times, Defendants sold visitor and/or guest packages for visit to its property through one of more of the named Defendants, the economic activity from which resulted in income generated in the United States, a portion of which remains in the United States, and inured to the benefit of the named defendants, with the remaining portion of such income transferred or credited to certain financial institutions outside of the United States for the benefit of the defendants and the operation of HILTON and RESORTS WORLD BIMINI.

11. At all material times, Defendants were operating within and/or actively and regularly marketing and soliciting business in this district, as well as throughout the world. Jurisdiction is proper in this district because the Defendants are engaged in substantial and not isolated activity within this state, and they are conducting, engaging in, or carrying on business ventures in this state, as well as solicitation of business within this state, specifically by way of maintaining sales teams and marketing teams here, regularly physically appearing in this jurisdiction to solicit business, otherwise advertising here, accepting reservations directly from this jurisdiction, as well as accepting reservations from this jurisdiction through their interactive and interrelated web sites, allowing Florida travel web sites to post links to their web sites and accepting funds from this jurisdiction and making purchases from this jurisdiction for the operations of HILTON and RESORTS WORLD BIMINI.

12. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.  In the alternative, if diversity jurisdiction does not apply, then this matter falls under the admiralty and maritime jurisdiction of this Court.

13. The causes of action asserted in this Complaint arise under the General Maritime Law of the United States and state law, where there is no conflict with General Maritime Law.

14. Defendants, at all times material hereto, personally or through an agent:

   a. Operated, conducted, engaged in or carried on a joint business venture in this state to promote, sell and operate shore excursions for Carnival's passengers, or had an office or agency in this state in furtherance of their joint business and profit-driven goals;

   b. Were engaged in substantial business activity within this state;

   c. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

   d. The acts of Defendants set out in this Complaint occurred in whole or in part in this state;

   e. Carnival was engaged in the business of providing to the public and to the Plaintiff in particular, for compensation, vacation cruises aboard its cruise vessel.

15. Defendants are subject to the jurisdiction of the Courts of this state.

**The Excursion Entities' activities in Florida satisfy a finding
of specific jurisdiction under Florida Statute § 48.193(1)(a)(1).**

16. At all times material hereto, the activities of Defendants, HILTON, RESORTS WORLD BIMINI, and XYZ CORPORATION(S) (hereinafter collectively referred to as the "Excursion Entities" in a manner so as to retain each Defendant's separate and individual liability in the event said Defendants are severed) in Florida satisfy the specific jurisdiction provision of Florida Statute § 48.193(1)(a), by acts that include, but are not limited to, (a) reaching out to Florida-based cruise lines, insurers, cruise industry associates, or premium financing companies for purposes of operating, conducting, engaging in, or carrying on a business or business venture in this state; (b) contractually agreeing to indemnify Florida-based cruise lines (entities mostly located in Miami and Fort Lauderdale) for any harm resulting to cruise passengers, thereby insuring a "person, property, or risk located within this state."; or (c) establishing a joint business

venture with Defendant, Carnival, which joint venture was based in Miami, Florida, U.S.A., to own, manage, fund, sponsor, advertise, market and operate the subject excursion.

**The Excursion Entities' contract with Carnival meets all requirements to satisfy a finding of specific jurisdiction under Florida Statute § 48.193(1)(a)(9).**

17. At all times material hereto, the Excursion Entities entered into a contract with Carnival concerning the subject excursion, which (a) contains a choice-of-law clause designating Florida law as the governing law; (b) contains a provision whereby the Excursion Entities agree to submit to the exclusive jurisdiction of the courts of Florida; (c) involves consideration of not less than $250,000 or relate to an obligation arising out of a transaction involving in the aggregate not less than $250,000; (d) does not violate the U.S. Constitution; and (e) has at least one party of the contract that is a resident of Florida or incorporated under the laws of Florida. Therefore, the contract between Carnival and the Excursion Entities meets all requirements to satisfy a finding of specific jurisdiction under Florida Statute § 48.193(1)(a)(9).

**The Excursion Entities' continuous and systematic general business contacts with Florida satisfy a finding of general jurisdiction under Florida Statute § 48.193(2).**

18. At all times material hereto, the Excursion Entities have engaged in substantial and not isolated activity within this state, including, but not limited to: (a) reaching out to cruise lines in Florida and establishing long-term partnerships with them; (b) deriving a substantial portion of their revenues from their business with Florida-based cruise lines; (c) periodically traveling to Miami to meet with cruise line executives for purposes of maintaining the business relationships or obtaining new business; (d) procuring insurance through companies in Florida; (e) maintaining Florida entities as "Agents of Record" for insurance purposes; (f) agreeing to insure and indemnify entities in Florida; (g) signing premium financing agreements with Florida entities in order to obtain a loan to pay for liability insurance premiums; (h) buying parts or supplies from Florida-

based suppliers to operate their excursions; (i) signing powers of attorney or appointing attorneys-in-fact in Florida to carry out their Florida operations; (j) participating in cruise industry trade shows in Miami (e.g., Sea trade); or (k) maintaining active membership in Florida Caribbean Cruise Association, based in Florida.

19. At all times material hereto, the Excursion Entities have been in the business of providing excursions to cruise line passengers in Bahamas through Florida-based cruise lines, including Carnival, or NCL. In entering into contracts with these Florida-based cruise lines, the Excursion Entities agree to the exclusive jurisdiction of courts in Florida. Additionally, by being under contract with the Florida-based cruise lines, the Excursion Entities receive the benefit of the cruise lines' advertising and promotional efforts.

20. At all times material hereto, the Excursion Entities' arrangement with the Florida-based cruise lines and the circumstances of this case are markedly different than those at issue in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). Herein, unlike *Daimler*, the Plaintiff is suing a Florida-based cruise line (Carnival) for injuries sustained while participating in an excursion operated by agents of the cruise line (the Excursion Entities) -- agents set up almost exclusively to do business with cruise lines (a majority of which are based in Florida). Further unlike *Daimler*, Carnival is "at home" in this jurisdiction because Carnival maintains its principal place of business in Florida. Thus, under *Daimler*, the Excursion Entities are also deemed "at home" in this jurisdiction by their direct and indirect contacts with Florida (through the Florida-based cruise lines).

**The Excursion Entities' activities in Florida satisfy
a finding of jurisdiction under Fed. R. Civ. P. 4(k).**

21. At all times material hereto, the Excursion Entities are also subject to jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2) because (a) the instant maritime tort claims arise under federal law; (b) the Excursion Entities are not subject to jurisdiction in any state's

courts of general jurisdiction; and (c) exercising jurisdiction over the Excursion Entities is consistent with the United States Constitution and laws based on the Excursion Entities' minimum contacts with the United States as a whole such that the maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice.  These minimum contacts are set forth in the above allegations, and include, but are not limited to, the Excursion Entities' location and operation in the United States, as well as marketing, promoting, and selling tickets for its excursions in the United States directly or through cruise lines as their agents located all over the United States.

## FACTS COMMON TO ALL COUNTS

22. At all times material hereto, Carnival owned, operated, managed, maintained and controlled the vessel, *Carnival Sunshine*.

23. At all times material hereto, the Excursion Entities owned and co-operated the subject excursion, which was offered, arranged for, sponsored, recommended, marketed, sold, co-operated and managed by Carnival.

24. On or about August 26, 2023, the Plaintiff herein was a paying passenger aboard the *Carnival Sunshine*, which Carnival operated in navigable waters.

### Promotional Material and Statements Concerning
### Shore Excursions Generally and the Subject Excursion Specifically

25. First, after booking the subject cruise, Carnival sent Plaintiff promotional material, which provided information and descriptions of shore excursions, including the excursion entitled, "Resorts World Pool and Beach Experience with Lunch" (hereinafter "subject excursion"). Carnival sent this promotional material to Plaintiff from Carnival's headquarters in Miami, Florida.

26. Second, and in addition to the promotional material sent to Plaintiff, Carnival's website and phone application contained information and descriptions of shore excursions, including the

subject excursion.   Tickets for shore excursions, including the subject excursion, were also available for sale on Carnival's website and through the phone application. For example, Carnival provided the following similar information on its website, which Carnival published from its server and headquarters in Florida, which Plaintiff reviewed prior to boarding the vessel and while sailing on the vessel on or about August 25, 2023:



- 9 -



*[Remainder of this page intentionally left blank]*

**DETAILS**

**Perfect Beach Day:** Take a free tram at your leisure to a beautiful white-sand beach and stunning turquoise waters, where your beach chair awaits.

**Resorts World Bimini:** Explore every luxurious detail of this 750-acre resort featuring restaurants, bars, casino, and other amenities.

**Oasis Lounge:** Relax in a ground-floor lagoon pool. Swim-up to the bar for your favorite cocktail without ever stepping foot outside the pool.

**Monkey Business Infinity Pool:** The stunning adults-only rooftop pool is located on the fifth floor of the resort and offers panoramic views of Bimini Bay and the aqua blue ocean.

**Lunch:** Enjoy your lunch from a pre-selected menu at the beach with a Bahama Mama or a choice of water or soda.

**What's Included:**
- Lunch and 2 Bahama Mamas.
- Free Shuttle to Resorts World Bimini Hotel and beach.
- Access to hotel pools, Oasis and Monkey Business, as well as a casino, restaurants and other amenities.
- Pool chairs and umbrellas on a first come, first served basis.
- Beach chairs and umbrellas.

 **The Best Price Guarantee**
Find a better price for any excursion we offer and we will refund you 110% of the price difference!*

**NOTES**

**What to Bring:** Beach towel and credit/debit card for purchases (this is a cashless venue).

**Good to Know:** Food and beverages can be purchased on site. Alcohol is served after 11:00 AM. This location is cashless.

27. Third, Carnival also had promotional materials at its shore excursion desk aboard the cruise ship and other areas of the ship with information and descriptions of shore excursions, including the subject excursion. Tickets for shore excursions, including the subject excursion, were also available for sale on Carnival's shore excursion desk aboard the cruise ship.

28. In fact, Plaintiff, JANE DOE (B.V.), visited the Carnival phone application to search for excursions while aboard the vessel, *Carnival Sunshine*, on or about August 25, 2023, and prior to purchasing the subject excursion for her travel party.

29. Prior to the departure for the excursion, Plaintiff received the below ticket, wherein Carnival referred to the excursion using proprietary language – "our amazing shore excursions[.]"

Plaintiff interpreted "our" to mean only Carnival. As such, Plaintiff relied on Carnival's information for the subject excursion that the subject shore excursion was offered and operated by Carnival, including the specific representations outlined above and below.



30. Further, the additional information and material Carnival made available and distributed to the Plaintiff represented that the excursions, including the subject excursion, were operated or overseen by Carnival, and implied that they were safe.  For example:

    a.  Carnival's website publicly described the shore excursions in proprietary language, including, but not limited to, "<u>our</u> excursions."  Similarly, page 2 of Carnival's shore excursion brochure also used proprietary language referring to shore excursion as "<u>our</u> excursions" and directing passengers to "our experts at the Shore Excursion Desk by the main lobby."

b. Carnival represented in its website that it "take[s] care of all the details and wait[s] for all <u>Carnival excursions</u> to return before departing."

c. Carnival's website stated that Carnival "hand selected the best local providers at every port of call," and Carnival recommended that passengers not engage in excursions, tours or activities that were not sold through Carnival.  Additionally, page 2 of Carnival's shore excursion brochure stated that Carnival "constantly upgrades the shore excursion packages offered in each port of call in order to make sure the best possible selections are made available."

d. Carnival represented in its promotional material (including its website) that its excursion providers are "reliable [and] reputable," that all shore excursions were "guided," and that Carnival selects its excursion providers because they have the "best reputation" in their respective ports.

e. Carnival's website stated that passengers should book the excursions sold through Carnival because the providers are "required to carry insurance," without providing any details as to the adequacy or limits of such insurance.

31. The photographs below depict the promotional material and information referenced herein, which were made available on Carnival's website:

**Carnival's Shore Excursions Homepage**
**([https://www.carnival.com/shore-excursions](https://www.carnival.com/shore-excursions))**

LIPCON, MARGULIES & WINKLEMAN, P.A.



**Carnival's Shore Excursion FAQs**
**(https://help.carnival.com/app/answers/detail/a_id/2866/~/shore-excursion-faqs)**

**When can I book shore excursions?**
Shore excursions may be booked online prior to sailing up until the Pre-Sail cut-off time, 11:30pm ET the evening prior to the cruise departure. Excursions for 2018 sail dates are available for purchase. For 2019 sail dates, please check back in late Spring of 2018.

After the online Pre-Sail, the remaining inventory will be available on the departure day onboard the ship. Due to availability, it is strongly suggested that guests take advantage of ordering their shore excursions in advance, online, in order to avoid disappointment once on board.

To browse our shore excursions click here.

**Do I have to book a shore excursion through Carnival or can I go off on my own?**
You are not obligated to book shore excursions through Carnival in order to leave the ship. Public transportation is available at each port. We suggest you visit your local library, bookstore or a pertinent website to determine where you would like to go.

Carnival does not offer any alternatives from the established shore excursion program. All shore excursions sold through Carnival are coordinated with reputable tour operators and include all of the most popular sites of interest.

One of the many benefits of booking excursions through Carnival is a guarantee that the ship will remain in port until all guests are back onboard. Carnival will not be aware of shore excursions that are booked independently. Also, keep in mind that some ports have visa requirements that may prevent you from venturing off on your own.

**Is it possible to go shopping and participate in an excursion while in port?**
Yes. Many of our excursions are only a few hours in duration, leaving you with plenty of time in most ports for shopping, sightseeing or even participating in another tour. Also, many of our longer excursions include a shopping stop.

**Why Book with Carnival for Shore Excursions?**
Reliable and Reputable. Yes, you have to take all of these into account, and we are happy to say that Carnival's shore excursion providers* are reliable, reputable, and required to carry insurance. Carnival has chosen the selected providers because these providers enjoy the best reputation in their respective ports. These shore excursion providers know that Carnival's guests expect a positive, fun-filled excursion.

**Are the shore excursions guided?**
Yes. All of the shore excursions sold through Carnival include an English-speaking guide except where otherwise noted in the tour description.

**What are the guidelines for writing tour reviews?**
We want to publish your review, so please:

▸ Keep your review focused on the shore excursion
▸ Refrain from mentioning competitors, prices, promotions or time sensitive details
▸ Do not include any personally identifiable information, such as full names
▸ Avoid writing about customer service; contact us instead if you have issues requiring immediate attention
▸ Reviews should be written by the guest who took the shore excursion.
▸ Please do not submit a review if you have not taken the shore excursion.

32. Among Carnival's promotional material concerning shore excursions, including the subject excursion, Carnival's website contained reviews for each excursion, which were posted by passengers. Notably, however, Carnival controls the information passengers disseminate about the excursions. For instance, as included in the above photograph, Carnival's website directs passengers to refrain from mentioning competitors, prices, and promotions, and to avoid writing about customer service issues related to the excursion. Carnival also alters or deletes passengers' reviews that contain complaints or information concerning safety concerns or prior incidents that have occurred while participating in the excursion. As a result, when passengers (like the Plaintiff) read the reviews on Carnival's website, they are under the impression that the excursion is safe because the vast majority (if not all) of the reviews Carnival chooses to leave on the website are positive, without any complaints about customer service, negative experiences and prior incidents.

33. Further, Carnival's promotional material and information did not contain adequate warnings or reviews from other passengers about customer service, negative experiences or prior incidents.

LIPCON, MARGULIES & WINKLEMAN, P.A.

34. The Plaintiff reviewed the foregoing information and material from Carnival, including Carnival's website, phone application, and brochures, concerning excursions generally and the subject excursion.  Plaintiff reviewed Carnival's website prior to boarding the vessel.  Then, shortly after boarding the vessel, while at sea on or about August 25, 2023. Plaintiff reviewed Carnival's brochures and promotional material available on the Carnival phone application aboard the vessel for shore excursions, and then, based upon the representations outlined above, purchased the subject excursion on or about August 25, 2023 and while aboard the *Carnival Sunshine* for all members of her travel party.

35. The information Carnival made available to passengers concerning shore excursions, including the Plaintiff concerning the subject excursion, was based on the information provided to Carnival by the Excursion Entities, or by Carnival's inspections and approval of the subject excursion, or of the Excursion Entities.   Accordingly, Defendants undertook a duty to accurately advise passengers, including the Plaintiff, concerning the subject excursion in order to obtain a profit for Defendants, and Defendants were required to execute that duty utilizing reasonable care under the circumstances.

### Subject Incident

36. Relying on the safety and reputability of Carnival as well as Carnival's representations regarding its shore excursions, including the subject excursion, Plaintiff purchased tickets for the subject excursion directly from Carnival.  The Plaintiff obtained all of the information regarding the subject excursion from Carnival and made all of the reservation arrangements for the subject excursion exclusively with Carnival.  In turn, Carnival received a portion of Plaintiff's ticket price for the subject excursion.

37. The Plaintiff reviewed Carnival's information concerning the subject excursion and relied upon Carnival's representations exclusively and to Plaintiff's detriment in deciding to purchase the subject excursion from Carnival and to participate in same during Plaintiff's cruise aboard the *Carnival Sunshine.*

38. Based upon Carnival's information concerning the subject excursion, Plaintiff reasonably understood that Carnival conducted regular inspections of the facilities, vessel(s), operations and operators of the subject excursion to ensure that they were reasonably safe, and Plaintiff relied upon such understanding to Plaintiff'' detriment in deciding to purchase the subject excursion from Carnival and to participate in same during Plaintiff's cruise aboard the *Carnival Sunshine.*

39. On or about August 26, 2023, as part of Plaintiff's cruise aboard the *Carnival Sunshine*, Plaintiff participated in the subject excursion in Bimini, Bahamas. This excursion was arranged for, sponsored, recommended, co-operated, marketed and sold by Carnival as part of the cruise aboard the *Carnival Sunshine* vessel.  Unbeknownst to Plaintiff at the time, the excursion was also co-operated by the Excursion Entities.

40. The subject excursion consisted of exploring the beach and other amenities at Resorts World Bimini in which Carnival arranged to have Plaintiff and other passengers transported to Bimini beach by shuttle. From the shuttle, the shore excursion participants could visit the beach, the hotel pools, including the Oasis lounge and Monkey Business infinity pool, visit the casino, restaurants, and other amenities. Also from the beach, Carnival arranged lunch and two Bahama Mamas drinks for the excursion participants.

LIPCON, MARGULIES & WINKLEMAN, P.A.

41. Once at Resorts World Bimini, Plaintiff decided to head to the adults-only pool with the poolside bar, Monkey Business. The Plaintiff decided to spend her afternoon enjoying a drink and the arranged lunch.

42. While at the pool and Monkey Business bar at RESORTS WORLD BIMINI, the Plaintiff met and was served drinks by the Assailant, who was the bartender at Monkey Business. The Assailant was wearing a hotel uniform while working behind the bar.

43. Immediately, the Assailant became overly flirtatious with Plaintiff, which made her extremely uncomfortable. As Plaintiff went to grab drinks for herself and her travel party, the Assailant made uncomfortable comments to Plaintiff including that he was looking for an American wife. The Assailant also serenaded Plaintiff, which again made her feel completely uncomfortable.  Specifically, the Assailant forcefully danced with Plaintiff and kissed her hand, when Plaintiff pulled her hand away and went into the pool to try to distance herself from the Assailant.

44.  The Plaintiff later ordered another round of drinks for herself and her travel party. Each time, the Assailant would have Plaintiff take the four drinks to her travel party and have Plaintiff return for her drink.

45. The Plaintiff went back to the bar for a third round of drinks. Again, the Assailant had her return to grab her drink. On this third drink, the Assailant advised Plaintiff that it was on the house. While sipping her third drink, the Plaintiff began to feel ill.

46. On the fourth trip for drinks, Plaintiff once again returned to the Assailant to grab her drink and again the Assailant advised it was on the house. The Plaintiff did not finish this drink and handed it to another person in her travel party, who finished the majority of the drink. The Plaintiff continued to feel ill and was felt progressively worse.

47. As Plaintiff began to feel worse, she decided to go to the restroom to splash water on her face. While doing so, the Plaintiff felt her balance was off. As Plaintiff exited the restroom and walked towards the pool, Plaintiff passed other restrooms. One of the other restroom doors opened, and the Assailant stepped out. The Assailant then side hugged Plaintiff and pivoted them both back into the restroom.

48. The Plaintiff stumbled into the restroom after the Assailant pivoted her into. The Assailant turned Plaintiff to face the mirror and Plaintiff heard the sound of the Assailant unfastening the buckle of his pants. The Assailant then forced Plaintiff to bend forward and proceeded to rape her, as she had nearly no control of her extremities. The Plaintiff was holding on to the restroom countertop trying to hold her balance as she was frightened and paralyzed in fear.

49. The Assailant told Plaintiff to be quiet because he could get fired for what he was doing. The Plaintiff was in fear and felt as if she was a ragdoll because she was trying to keep her balance and was unable to fight back.

50. The Assailant then pushed Plaintiff out of the restroom and Plaintiff walked towards the restroom she was previously in to use the restroom. The Plaintiff then returned to the pool with her travel party.

51. For the remainder of the day, including when she was back aboard Carnival's vessel, Plaintiff continued to feel ill and was unable to eat.

52. The following morning, on or about August 27, 2023, Plaintiff felt a bit better and was able to get to the onboard medical facility for treatment and reporting of the sexual assault.

53. Plaintiff's travel party, who had the majority of Plaintiff's fourth drink, also fell ill after the drink.

54. As a result of the incident described above, and as a direct result of the negligence of Carnival and the Excursion Entities, Plaintiff was sexually assaulted and raped and Plaintiff suffered physical injury and severe mental distress.

**Carnival's Notice of the Dangerous Excursion and Incompetent Providers**

55. Before Plaintiff's incident, Carnival and the Excursion Entities should have known of the general probability and/or foreseeability that its cruise passengers would become sexually assaulted and/or raped at a day excursion to the Excursion Entities' property, based on the following :

a. Carnival frequently took its cruise passengers to the Bahamas and recommended the subject excursion to its passengers, so that Carnival could earn a profit, such that Carnival was familiar with the subject Excursion Entities and its criminal history, or should have been.

b. Carnival actively monitors crime in the Bahamas (where the Excursion Entities' property is located), or should have been, because that is a scheduled port of call for its cruise.

c. Between 2018-2019, the U.S. State Department issued a travel warning(s) for the Bahamas, where the subject Excursion Entities' property is located, warning that violent crime, including sexual assault, is common, even during the day and in tourist areas. Carnival knew or should have known of this warning as it is a U.S.- and Florida-based cruise line that has its cruise ships at port in Bimini, Bahamas often.

d. Bahamian news outlets, through reports from the Royal Bahamian Police Force's Police Commissioner, have reported an 11% increase in rape incident in 2023 in the Bahamas. Carnival knew or should have known of this warning as it is a frequent port of call for its cruise.[1]

e. Carnival undertook a duty to arrange for transport and shuttle accommodations to the Excursion Entities' property, and in doing so, did, or should have, researched the Excursion Entities' property and safety, including any prior sexual assault incidents occurring at the property.

---

[1] https://ewnews.com/cop-rape-uptick-of-11-overall-crime-statistics-down-10#:~:text=Fernander%20revealed%20that%2050%25%20of,10%25%20when%20compared%20to%202022 (visited July 9, 2024).

56. The Excursion Entities knew or should have known of the general probability that its guests at the property would become sexually assaulted and/or raped on the property because:

a. Bahamian news outlets, through reports from the Royal Bahamian Police Force's Police Commissioner, have reported an 11% increase in rape incident in 2023 in the Bahamas. The Excursion Entities knew or should have known of this warning as it was reported by Bahamian news outlets and reported by the Royal Bahamian Police Force.

57. The dangerous conditions which directly caused and/or contributed to the subject incident and Plaintiff's resulting injuries include, but are not limited to:

a. Carnival and the Excursion Entities' failure to reasonably warn Plaintiff of the increase in violent crime and/or sexual assaults in the Bahamas in 2023;

b. Carnival and the Excursion Entities' failure to reasonably warn Plaintiff that the Excursion Entities would not or could not provide her with a reasonably safe property and/or would provide substandard security on the property;

c. Carnival's failure to reasonably investigate the Excursion Entities and the property at which it arranged Plaintiff's day excursion during the subject cruise;

d. The Excursion Entities failure to adequately investigate its employees.

58. Plaintiff is unable to presently determine all of the prior similar incidents which have occurred providing notice to the Defendants, because Defendants regularly resolves cases and requires confidentiality as part of settlements in order to shield the facts and circumstances of prior incidents from publicly available sources. Accordingly, Defendants are orchestrating and are actively involved in concealment of prior incidents which may be substantially similar to the present incident, which may only be determined through discovery in litigation.

59. Further, before Plaintiff's incident, Carnival was or should have been on notice that the excursion was not reasonably safe for passengers.  This notice was or should have been acquired through Carnival's initial approval process or its yearly inspections of the subject excursion.

a. Specifically, before offering excursions to passengers, the excursions and the excursion operators are subject to Carnival's approval pursuant to policies and procedures promulgated by Carnival.  This is a duty undertaken by Carnival, in

part, so that it may make the aforementioned representations concerning the subject excursion to its passengers in an effort to generate a profit for Carnival. Accordingly, Carnival is required to execute this duty with reasonable care under the circumstances.

b.  Moreover, once an excursion is approved and accepted by Carnival, Carnival sends excursion operators standards, policies, and other written procedures that the operators must adhere to while Carnival is offering their excursions to its passengers. Additionally, the excursion operators are subject to yearly inspections and approval by Carnival, wherein Carnival is supposed to conduct site inspections of the excursion as well as the vessel and operations of the excursion.  The yearly inspections and approval processes also require excursion operators to submit yearly "bids" and reports to Carnival, wherein the operators disclose the details of incidents that occurred during the excursion involving cruise line passengers (among other information).  Thus, before Plaintiff's incident, Carnival was or should have been on notice that cruise ship passengers were injured, or probably would become injured, while participating in these types of excursions.

c.  Further, Carnival's yearly inspections and approval processes, including taking the subject excursion under the same or similar circumstances as the subject incident, did or should have revealed to Carnival that the subject excursion was dangerous or not suitable for passengers due to: i) the rise in rape incident in 2023 in the Bahamas; ii) the U.S. State Department issued travel warning(s) for the Bahamas in 2018-2019 for violent crimes including sexual assaults; and iii) the lack of reasonable security for passengers/visitors.

60. Lastly, prior to offering the subject excursion to Plaintiff, Carnival did not know the identity or competency of the shore excursion personnel/employees the Excursion Entities employed for the subject excursion on the day of the subject incident. As such, Carnival failed to reasonably investigate the shore excursion provider, despite Carnival's representation that it "hand select[s] the best local providers at every port of call". *See Perry v. HAL Antillen NV*, 2013 WL 2099499 (W.D. Wash 2013) (denying summary judgment on a negligent selection claim because the cruise line did not know of the subcontractor who the excursion operator employed to transport shore excursion participants; despite the cruise line's representation that it had "take[n] steps to identify and contract with reputable tour operators").

**COUNT I – VICARIOUS LIABILITY AGAINST DEFENDANTS**

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through sixty (60) as though alleged originally herein.

61. At all times material hereto, the Assailant was the employee of Carnival either directly or indirectly through Carnival's partnership and/or apparent agency with the Excursion Entities.

62. At all times material hereto, the Assailant was the employee of HILTON either directly or indirectly through its partnership and/or apparent agency with the Excursion Entities.

63. At all times material hereto, the Assailant was the employee of RESORTS WORLD BIMINI either directly or indirectly through its partnership and/or apparent agency with the Excursion Entities.

64. At all times material hereto, the Assailant was the employee of was the employee of XYZ CORPORATION(S) either directly or indirectly through its partnership and/or apparent agency with the Excursion Entities.

65. At all times material hereto, the Assailant was acting within the course and scope of his employment when he took the actions described in paragraphs 42-50.

66. At all times material hereto, Defendants were and are vicariously liable for the tortious actions of its employees, including the Assailant.

67. As a direct and proximate result of the tortious actions of the Assailant, the Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent or continuing in nature

and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law and demands trial by jury.

### COUNT II – MISLEADING ADVERTISING IN VIOLATION OF FLORIDA STATUTE § 817.41 AGAINST DEFENDANTS

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through sixty (60) as though alleged originally herein.

68. Plaintiff reviewed Carnival's website prior to boarding the vessel, including the information set forth in paragraphs 25-35 above. Then, shortly after boarding the vessel on or about August 25, 2023, Plaintiff visited the Carnival phone application reviewed Carnival's shore excursion brochure.

69. At all times material hereto, Carnival's promotional material, including its website and brochure referenced above, which Plaintiff reviewed, contained the statements and descriptions set forth in paragraphs 25-35 above.

70. At all times material hereto, Carnival's representations and Carnival's promotional material, including its website, phone application, and brochure referenced above, which Plaintiff reviewed, contained misrepresentations of material facts, including:

    a. Representing that the excursion was safe, as alleged in paragraph 30(c)-(d), when in reality, it was not safe based on the facts alleged in paragraphs 36-60; and/or

    b. Mispresenting shore excursions, including the subject excursion, as being Carnival's excursions through the use of proprietary language, as alleged in paragraphs 29-31, when in reality, Carnival claims it was an independent contractor's (not Carnival's) excursion; and/or

    c. Misrepresenting that the excursion providers are safe, reliable and/or reputable, as alleged in paragraph 30(d), when in actuality, the subject excursion was not reasonably safe, for reasons alleged in paragraphs 36-60, and/or passengers'

comments, complaints or information concerning safety concerns and/or prior incidents are censored, altered and/or deleted on publicly available website(s) operated and/or controlled by Carnival, as alleged in paragraph 32; and/or

d. Representing that shore excursion providers are insured, as alleged in paragraph 30(e), when such insurance may not cover claims outside of the providers' area of operation and/or may contain other limitations, such as the amount and types of claims covered; and/or

e. Representing or implying that excursion providers would be subject to personal jurisdiction in the United States or subject to United States or Florida law by contractually requiring all Carnival passengers (including the Plaintiff) to file suit in a specific jurisdiction in the United States for all claims arising from the subject cruise (including incidents that occur while participating in shore excursions), pursuant to its ticket contract, or advertising that its excursion providers are insured, as alleged in paragraph 30(e), when in actuality, excursion entities (including the Excursion Entities) challenge this Court's personal jurisdiction.

71. Pursuant to Florida Statute § 817.41(4), Carnival as well as the Excursion Entities are responsible for the foregoing false or misleading advertisements because Defendants were named in or obtained the benefits of the statements or advertisements, and Carnival distributed the above outlined misleading advertisements and marketing material primarily from its headquarters in Miami, Florida, U.S.A. to the general public in Florida, specifically, and to the U.S. at large.

72. At all times material hereto, the foregoing statements Carnival made or disseminated were known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be false or misleading.  This knowledge was or should have been acquired through: (a) Carnival's initial approval process of the Excursion Entities or the excursion, including, but not limited to, having Carnival's representative(s) take the excursion under the same or similar circumstances as the subject incident, as alleged in paragraphs 55-60; (b) Carnival's yearly inspections of the Excursion Entities or the excursion, including, but not limited to, conducting site inspections under the same or similar circumstances as the subject incident, as alleged in paragraphs 55-60; or (c) prior incidents involving Carnival passengers injured on the Excursion

- 24 -

L I P C O N ,   M A R G U L I E S   &   W I N K L E M A N ,   P . A .

Entities' excursions or other hotel excursions, or other incidents reported within the cruise industry involving the Excursion Entities' excursions or other hotel excursions, as alleged in paragraphs 55-60.

73. At all times material hereto, the statements were so made or disseminated with the intent or purpose, either directly or indirectly, of inducing passengers (including Plaintiff) to rely on the statements and act by purchasing tickets for shore excursions (including the subject excursion), as evident in the photographs included in paragraphs 26, 29, and 31.

74. At all times material hereto, the Plaintiff justifiably relied on the representations made by Carnival when Plaintiff purchased tickets for the subject excursion and participated in the subject excursion. The Plaintiff's reliance on Carnival's representations was justified considering that Plaintiff is a resident of Georgia, and Carnival was in the business of offering shore excursions to thousands of passengers daily from which it earned tens of millions of dollars a year (or more). As a result, Carnival was in a much stronger position to identify the potential dangers or inequities that passengers (like Plaintiff) will encounter when participating in excursions. The Plaintiff therefore justifiably relied on Carnival to accurately advise Plaintiff concerning the excursion providers and the subject excursion as alleged in paragraphs 26, 28, 29-31, and 34-35.  The Plaintiff's reliance on Carnival's representations was also justified because Carnival made all arrangements for the subject excursion; Carnival marketed the subject excursion using its company logo; Carnival recommended its passengers to not engage in excursions, tours or activities that are not sold through Carnival; and Plaintiff's exclusive contacts concerning the subject excursion was with Carnival and Carnival's phone application until the point that Plaintiff actually participated in the subject excursion. Further, had Carnival not made the foregoing representations, the Plaintiff

would have made a different decision, such as not participating in the subject excursion if it was not actually operated by Carnival.

75. As a direct result of the foregoing dangerous conditions to which Plaintiff was exposed and experienced, Plaintiff was injured about Plaintiff's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law and demands trial by jury.

## COUNT III – NEGLIGENT MISREPRESENTATION AGAINST CARNIVAL

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through sixty (60) as though alleged originally herein.

76. Plaintiff reviewed Carnival's website prior to boarding the vessel, including the information set forth in paragraphs 26 and 31 above.  Then, shortly after boarding the vessel on or about August 25, 2023, Plaintiff visited the Carnival phone application while aboard the vessel and reviewed Carnival's shore excursion brochure, which contained the information set forth in paragraphs 26 and 29-31.

77. At all times material hereto, Carnival's promotional material, including its website, brochure, and phone application referenced above, which Plaintiff reviewed, contained the statements and descriptions set forth in paragraphs 26 and 29-31 above.

78. At all times material hereto, Carnival's representations and Carnival's promotional material, including its website, brochure, and phone application referenced above, which Plaintiff reviewed, contained misrepresentations of material facts, including:

a. Representing that the excursion was safe, as alleged in paragraph 30(c)-(d), when in reality, it was not safe based on the facts alleged in paragraphs 36-60; and/or

b. Mispresenting shore excursions, including the subject excursion, as being Carnival's excursions through the use of proprietary language, as alleged in paragraphs 29-31, when in reality, Carnival claims it was an independent contractor's (not Carnival's) excursion; and/or

c. Misrepresenting that the excursion providers are safe, reliable and/or reputable, as alleged in paragraph 30(d), when in actuality, the subject excursion was not reasonably safe, for reasons alleged in paragraphs 36-60, and/or passengers' comments, complaints or information concerning safety concerns and/or prior incidents are censored, altered and/or deleted on publicly available website(s) operated and/or controlled by Carnival, as alleged in paragraph 32; and/or

d. Representing that shore excursion providers are insured, as alleged in paragraph 30(e), when such insurance may not cover claims outside of the providers' area of operation and/or may contain other limitations, such as the amount and types of claims covered; and/or

e. Representing or implying that excursion providers would be subject to personal jurisdiction in the United States or subject to United States or Florida law by contractually requiring all Carnival passengers (including the Plaintiff) to file suit in a specific jurisdiction in the United States for all claims arising from the subject cruise (including incidents that occur while participating in shore excursions), pursuant to its ticket contract, or advertising that its excursion providers are insured, as alleged in paragraph 30(e), when in actuality, excursion entities (including the Excursion Entities) challenge this Court's personal jurisdiction.

79. At all times material hereto, the foregoing statements Carnival made or disseminated were known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be false or misleading. This knowledge was or should have been acquired through: (a) Carnival's initial approval process of the Excursion Entities or the excursion, including, but not limited to, having Carnival's representative(s) take the excursion under the same or similar

Case 1:24-cv-22987-CMA   Document 1   Entered on FLSD Docket 08/05/2024   Page 28 of 44

circumstances as the subject incident, as alleged in paragraphs 55-60; (b) Carnival's yearly inspections of the Excursion Entities or the excursion, including, but not limited to, conducting site inspections under the same or similar circumstances as the subject incident, as alleged in paragraphs 55-60; or (c) prior incidents involving Carnival passengers injured on the Excursion Entities' excursions or other hotel excursions, or other incidents reported within the cruise industry involving the Excursion Entities' excursions or other hotel excursions, as alleged in paragraphs 55-60.

80. At all times material hereto, Carnival's statements were so made or disseminated with the intent or purpose, either directly or indirectly, of inducing passengers (including Plaintiff) to rely on the statements and act by purchasing tickets for shore excursions (including the subject excursion), as evident in the photographs included in paragraphs 26, 29 and 31.

81. At all times material hereto, the Plaintiff justifiably relied on the representations made by Carnival when Plaintiff purchased tickets for the subject excursion and participated in the subject excursion. The Plaintiff's reliance on Carnival's representations was justified considering that Plaintiff is a resident of Georgia, and Carnival was in the business of offering shore excursions to thousands of passengers daily from which it earned tens of millions of dollars a year (or more). As a result, Carnival was in a much stronger position to identify the potential dangers and inequities that passengers (like Plaintiff) will encounter when participating in excursions. The Plaintiff therefore justifiably relied on Carnival to accurately advise Plaintiff concerning the excursion providers or the subject excursion as alleged in paragraphs 26, 28, 29-31, and 34-35. The Plaintiff's reliance on Carnival's representations was also justified because Carnival made all arrangements for the subject excursion; Carnival marketed the subject excursion using its company logo; Carnival recommended its passengers to not engage in excursions, tours or activities that are

LIPCON, MARGULIES & WINKLEMAN, P.A.

not sold through Carnival; and Plaintiff's exclusive contacts concerning the subject excursion was with Carnival and Carnival's phone application until the point that Plaintiff actually participated in the subject excursion. Further, had Carnival not made the foregoing representations, the Plaintiff would have made a different decision, such as not participating in the subject excursion if it was not actually operated by Carnival.

82. As a direct result of the foregoing dangerous conditions to which Plaintiff was exposed and experienced, Plaintiff was injured about Plaintiff's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law and demands trial by jury.

## COUNT IV – NEGLIGENT SELECTION AND/OR RETENTION AGAINST CARNIVAL

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through sixty (60) as though alleged originally herein.

83. At all times material hereto, it was the duty of Carnival to provide Plaintiff with reasonable care under the circumstances.

84. At all times material hereto, Carnival had a duty to select or hire competent excursion operators.

85. At all times material hereto, as part of its duty to select or hire competent excursion operators, it was incumbent on Carnival to diligently inquire into the Excursion Entities' identity, competency and fitness, including that of their employees and subcontractors.

86. On or about August 26, 2023, Carnival or Carnival and its agents, servants and employees breached Carnival's duty to provide Plaintiff with reasonable care under the circumstances by selecting or retaining the Excursion Entities, which were incompetent or unfit based on the following:

a. The failure of the Excursion Entities to provide a reasonably safe excursion;

b. The failure to identify and/or verify the employees and/or shore excursion operators, their qualifications or competencies;

c. The failure of the Excursion Entities to recognize the travel advisory and uptick in violent crimes, including sexual assaults, in the subject area and provide additional employees and/or personnel to monitor, supervise, or act as security on the premises;

d. The failure of the Excursion Entities to provide security personnel for the subject excursion;

e. The failure of the Excursion Entities to provide employee training to prevent sexual assaults and/or rapes;

f. The failure of the Excursion Entities to properly investigate or implement rules and regulations for hiring employees;

g. The failure of the Excursion Entities to provide a safe environment and location in which guests were not targeted by employees and/or bartenders while on the premises and potential victims of sexual assaults and/or rapes;

h. The failure of the Excursion Entities to have properly trained and supervised persons operating the subject excursion or assisting passengers during the excursion;

i. The failure of the Excursion Entities to adequately supervise the resort premises, including the pool areas for the subject excursion, so as to identify dangers associated with sexual assaults and/or rapes committed by employees and/or bartenders.

87. At all times material hereto, Carnival knew of the foregoing conditions causing the subject incident and did not correct them, or the conditions existed for a sufficient length of time so that Carnival, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.   This knowledge was or should have been acquired through: (a) Carnival's initial approval process of the Excursion Entities or the excursion, including, but not limited to, having Carnival's representative(s) take the excursion under the same or similar circumstances as the subject incident, as alleged in paragraphs 55-60; (b) Carnival's yearly inspections of the Excursion Entities or the excursion, including, but not limited to, conducting site inspections under the same or similar circumstances as the subject incident, as alleged in paragraphs 55-60; or (c) prior incidents involving Carnival passengers injured on the Excursion Entities' excursions or other hotel excursions, or other incidents reported within the cruise industry involving the Excursion Entities' excursions or other hotel excursions, as alleged in paragraphs 55-60.

88. As a direct and proximate result of the Excursion Entities' incompetence or unfitness, Plaintiff was sexually assaulted and/or raped by an employee bartender while participating in the subject shore excursion due to conditions that include, but were not limited to: i) lack of security personnel on the premises; ii) the lack of proper training and/or supervision of employees on the premises; and/or iii) the lack of or inadequate warnings to guests regarding the uptick in violent crimes, including sexual assaults, in the Bahamas.   These factors directly caused or contributed to the Plaintiff being sexually assaulted and/or raped and suffering physical and emotional injuries, and therefore, the subject incident would not have occurred but for the Excursion Entities' incompetence or unfitness.

LIPCON,  MARGULIES  &  WINKLEMAN,  P.A.

89. As a direct result of the foregoing dangerous conditions to which Plaintiff was exposed and experienced, Plaintiff was injured about Plaintiff's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law and demands trial by jury.

### COUNT V – NEGLIGENT FAILURE TO WARN AGAINST CARNIVAL

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through sixty (60) as though alleged originally herein.

90. At all times material hereto, it was the duty of Carnival to provide Plaintiff with reasonable care under the circumstances.

91. At all times material hereto, it was the duty of Carnival to warn passengers (like Plaintiff) of dangers that were known, or reasonably should have been known, to Carnival in places where passengers (like Plaintiff) are invited to or may reasonably be expected to visit beyond the point of disembarkation.

92. On or about August 26, 2023, the Plaintiff was participating in the subject excursion, which Carnival invited and reasonably expected Plaintiff to participate in since Carnival sold Plaintiff tickets for the excursion.

93. On or about August 26, 2023, Carnival or Carnival and its agents, servants and employees breached Carnival's duty to warn the Plaintiff through the following conduct:

    a.   Failure to adequately warn or communicate to passengers (including the Plaintiff) of the uptick in violent crime, including sexual assaults, in the Bahamas;

    b.   Failure to adequately warn passengers (including the Plaintiff) that the Excursion Entities would not provide security personnel for the subject excursion;

    c.   Failure to adequately warn or communicate to passengers (including the Plaintiff) that Carnival does not adequately inspect the premises and/or employees used for the subject excursion, despite the subject excursion being promoted as "hand selected" by Carnival;

    d.   Failure to adequately warn or communicate to passengers (including the Plaintiff) that the Excursion Entities carry independent insurance from the cruise line that has lower limits and more limited coverage than Carnival's insurance.

94. The above outlined conduct directly caused or contributed to Plaintiff's injuries because Plaintiff would not have purchased tickets for or participated in the subject excursion had Carnival or its agents, servants, or employees adequately warned or communicated the foregoing to the Plaintiff.

95. At all times material hereto, Carnival knew of the foregoing conditions causing the subject incident and did not correct them, or the conditions existed for a sufficient length of time so that Carnival, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them. This knowledge was or should have been acquired through: (a) Carnival's initial approval process of the Excursion Entities or the excursion, including, but not limited to, having Carnival's representative(s) take the excursion under the same or similar circumstances as the subject incident, as alleged in paragraphs 55-60; (b) Carnival's yearly inspections of the Excursion Entities or the excursion, including, but not limited to, conducting site inspections under the same or similar circumstances as the subject incident, as alleged in paragraphs 55-60; or (c) prior incidents involving Carnival passengers injured on the Excursion

Entities' excursions or other hotel excursions, or other incidents reported within the cruise industry involving the Excursion Entities' excursions or other hotel excursions, as alleged in paragraphs 55-60.

96. As a direct result of the foregoing dangerous conditions to which Plaintiff was exposed and experienced, Plaintiff was injured about Plaintiff's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law and demands trial by jury.

## COUNT VI – GENERAL NEGLIGENCE AGAINST CARNIVAL

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through sixty (60) as though alleged originally herein.

97. At all times material hereto, it was the duty of Carnival to provide Plaintiff with reasonable or ordinary care under the circumstances.

98. On or about August 26, 2023, Carnival or Carnival and its agents, servants and employees breached Carnival's duty to provide Plaintiff with reasonable or ordinary care under the circumstances, based on the following conduct:

   a. Failure to recognize the increase in violent crime, including sexual assaults, in the Bahamas;

LIPCON, MARGULIES & WINKLEMAN, P.A.

b.  Failure to cancel or modify the subject excursion in light of the increase in violent crime in the Bahamas;

c.  Failure to provide additional security personnel for the subject excursion;

d.  Failure to provide a safe environment and/or premises where passengers, like the Plaintiff, are not targeted by employees and/or bartenders;

e.  Promoting the subject excursion as "hand selected" by Carnival, thereby implying the excursion's vessel(s) or operations were reasonably safe under the circumstances, when in fact they were not;

f.  Failure to adequately review the safety record of the Excursion Entities before recommending the subject excursion to passengers and the Plaintiff.

99. All or some of the above conduct by Carnival or its agents, servants, or employees, directly caused or contributed to Plaintiff's injuries while participating in the subject excursion.

100.    At all times material hereto, Carnival knew of the foregoing conditions causing the subject incident and did not correct them, or the conditions existed for a sufficient length of time so that Carnival, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.  This knowledge was or should have been acquired through: (a) Carnival's initial approval process of the Excursion Entities or the excursion, including, but not limited to, having Carnival's representative(s) take the excursion under the same or similar circumstances as the subject incident, as alleged in paragraphs 55-60; (b) Carnival's yearly inspections of the Excursion Entities or the excursion, including, but not limited to, conducting site inspections under the same or similar circumstances as the subject incident, as alleged in paragraphs 55-60; or (c) prior incidents involving Carnival passengers injured on the Excursion Entities' excursions or other hotel excursions, or other incidents reported within the cruise industry involving the Excursion Entities' excursions or other hotel excursions, as alleged in paragraphs 55-60.

LIPCON,   MARGULIES   &   WINKLEMAN,   P.A.

101.     As a direct result of the foregoing dangerous conditions to which Plaintiff was exposed and experienced, Plaintiff was injured about Plaintiff's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law and demands trial by jury.

## COUNT VII – GENERAL NEGLIGENCE AGAINST THE EXCURSION ENTITIES

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through sixty (60) as though alleged originally herein.

102.     At all times material hereto, the Excursion Entities owned or operated the subject excursion and/or property.

103.     At all times material hereto, it was the duty of the Excursion Entities to provide Plaintiff with reasonable care under the circumstances.

104.     On or about August 26, 2023, the Excursion Entities or the Excursion Entities and their agents, servants, and employees breached their duty to provide Plaintiff with reasonable care under the circumstances, based on the following conduct:

    a.  Failure to recognize the increase in violent crime, including sexual assaults, in the Bahamas;

    b.  Failure to cancel or modify the subject excursion in light of the increase in violent crime in the Bahamas;

LIPCON, MARGULIES & WINKLEMAN, P.A.

c.  Failure to provide additional security personnel for the subject excursion;

d.  Failure to provide a safe environment and/or premises where passengers, like the Plaintiff, are not targeted by employees and/or bartenders;

e.  Failure to ensure that properly trained and supervised persons operated the subject excursion;

f.  Having a shore excursion that was not competently operated.

g.  The failure of the Excursion Entities to provide a reasonably safe excursion;

h.  The failure to identify and/or verify the employees and/or shore excursion operators, their qualifications or competencies;

i.  The failure of the Excursion Entities to recognize the travel advisory and uptick in violent crimes, including sexual assaults, in the subject area and provide additional employees and/or personnel to monitor, supervise, or act as security on the premises;

j.  The failure of the Excursion Entities to provide security personnel for the subject excursion;

k.  The failure of the Excursion Entities to provide employee training to prevent sexual assaults and/or rapes;

l.  The failure of the Excursion Entities to properly investigate or implement rules and regulations for hiring employees;

m.  The failure of the Excursion Entities to provide a safe environment and location in which guests were not targeted by employees and/or bartenders while on the premises and potential victims of sexual assaults and/or rapes;

n.  The failure of the Excursion Entities to have properly trained and supervised persons operating the subject excursion or assisting passengers during the excursion;

o.  The failure of the Excursion Entities to adequately supervise the resort premises, including the pool areas for the subject excursion, so as to identify dangers associated with sexual assaults and/or rapes committed by employees and/or bartenders.

105.    All or some of the above outlined conduct by the Excursion Entities or their agents, servants, or employees, directly caused or contributed to Plaintiff's injuries while participating in the subject excursion.

106.    At all times material hereto, the Excursion Entities created or knew of the foregoing conditions causing the subject incident and did not correct them, or the conditions existed for a sufficient length of time so that the Excursion Entities, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.  This knowledge was or should have been acquired through: (a) the initial approval process of the Excursion Entities or the excursion, including, but not limited to, having representative(s) take the subject excursion under the same or similar circumstances as the subject incident, as alleged in paragraphs 55-60; (b) the yearly inspections of the Excursion Entities or the excursion, including, but not limited to, conducting site inspections under the same or similar circumstances as the subject incident, as alleged in paragraphs 55-60; or (c) prior incidents involving passengers injured on the Excursion Entities' excursions or other hotel excursions, or other incidents that have occurred during Carnival cruises or that have been reported within the industry, as alleged in paragraphs 55-60.

107.    As a direct result of the foregoing dangerous conditions to which Plaintiff was exposed and experienced, Plaintiff was injured about Plaintiff's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law and demands trial by jury.

## COUNT VIII – NEGLIGENT FAILURE TO WARN AGAINST THE EXCURSION ENTITIES

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through sixty (60) as though alleged originally herein.

108.   At all times material hereto, it was the duty of the Excursion Entities to provide Plaintiff with reasonable care under the circumstances.

109.   At all times material hereto, it was the duty of the Excursion Entities to warn passengers (like Plaintiff) of dangers that were known, or reasonably should have been known, to the Excursion Entities in places where passengers (like Plaintiff) are invited to or may reasonably be expected to visit beyond the point of disembarkation.

110.   On or about August 26, 2023, the Plaintiff was participating in the subject excursion, which the Excursion Entities invited and reasonably expected Plaintiff to participate in since Carnival contracted with the Excursion Entities to operate the excursion and sold Plaintiff the ticket for the excursion to take place on August 26, 2023.

111.   On or about August 26, 2023, the Excursion Entities or the Excursion Entities and their agents, servants and employees breached their duty to warn the Plaintiff through the following conduct:

    a.  Failure to adequately warn passengers (including the Plaintiff) of the uptick in violent crime, including sexual assaults, in the Bahamas;

    b.  Failure to adequately warn passengers (including the Plaintiff) that the Excursion Entities would not provide additional security personnel on the premises for the subject excursion;

L I P C O N ,   M A R G U L I E S   &   W I N K L E M A N ,   P . A .

    c.   Failure to adequately warn passengers (including the Plaintiff) that the Excursion Entities would not provide a safe environment in which passengers, like the Plaintiff, would not be targeted by employees and/or bartenders;

    d.   Failure to adequately warn or communicate to passengers (including the Plaintiff) the limits of the Excursion Entities' insurance.

112. The above conduct directly caused or contributed to Plaintiff's injuries while participating in the subject excursion because Plaintiff would not have purchased tickets for or participated in the subject excursion had the Excursion Entities or its agents, servants, or employees adequately warned or communicated the foregoing to the Plaintiff.

113. As a direct result of the foregoing dangerous conditions to which Plaintiff was exposed and experienced, Plaintiff was injured about Plaintiff's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law and demands trial by jury.

## COUNT IX – NEGLIGENCE AGAINST DEFENDANTS
## BASED ON APPARENT AGENCY OR AGENCY BY ESTOPPEL

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through sixty (60) as though alleged originally herein.

114. At all times material hereto, the Excursion Entities were the apparent agent(s) of Carnival.

L I P C O N ,   M A R G U L I E S   &   W I N K L E M A N ,   P . A .

115. At all times material hereto, Carnival is estopped to deny that the Excursion Entities were their agent(s) or employee(s).

116. At all times material hereto, Carnival made manifestations which caused the Plaintiff to believe that the Excursion Entities had authority to act for the benefit of Carnival. These manifestations included:

a. Carnival allowed its name to be utilized in connection with the advertising of the Excursion Entities;

b. Carnival made all arrangements for the subject excursion without effectively disclosing to the Plaintiff that the subject excursion was being run by another entity (or entities);

c. Carnival marketed the subject excursion using its company logo on its website and in its brochures and on its phone application without effectively disclosing to the Plaintiff that the subject excursion was being run by another entity (or entities);

d. Until the point that Plaintiff actually arrived at the Excursion Entities' property for the subject excursion, the Plaintiff's exclusive contacts concerning the subject excursion were with Carnival;

e. Carnival recommended to Plaintiff to not engage in excursions, tours or activities that are not sold through Carnival as Carnival has no familiarity with other tours or their operations;

f. The fee for the excursion was charged to the Plaintiff, and collected from the Plaintiff, exclusively by Carnival;

g. Plaintiff received an excursion ticket with Carnival's name printed on the ticket with language indicating "on of **our** amazing shore excursions;" (emphasis added)

h. Plaintiff received the receipt for the purchase of the subject excursion exclusively from Carnival.

117. Plaintiff reasonably relied on the above, to her detriment, so as to believe that the Excursion Entities were the employee(s) or agent(s) of Carnival in choosing the subject excursion.

118. It was reasonable to believe that the Excursion Entities were Carnival's employee(s) or agent(s) because the Plaintiff booked, paid for and made all necessary

arrangements for the subject excursion with Carnival. Carnival's actions caused Plaintiff to believe that the Excursion Entities had authority to act on Carnival's behalf. At no time did the Excursion Entities represent to the ship's passengers or the Plaintiff in particular in a meaningful way that the Excursion Entities were not agents or employees of Carnival.

119.    Plaintiff's reasonable reliance was detrimental because Plaintiff would not have booked, paid for or participated in the subject excursion or incur any injuries had the Plaintiff known that the subject excursion was not operated by Carnival, as alleged in paragraphs 34-38.

120.    The foregoing acts of negligence of Carnival and the Excursion Entities were a direct and proximate cause of Plaintiff's injuries.

121.    As a direct result of the foregoing dangerous conditions to which Plaintiff was exposed and experienced, Plaintiff was injured about Plaintiff's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law and demands trial by jury.

## COUNT X – BREACH OF NON-DELEGABLE DUTY AGAINST CARNIVAL

The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through sixty (60) as though alleged originally herein.

L I P C O N ,   M A R G U L I E S   &   W I N K L E M A N ,   P . A .

122. Carnival contractually offered to provide Plaintiff the subject shore excursion. The Plaintiff accepted that contractual offer in reliance upon Carnival's advertisements, marketing, and representations, and provided consideration to Carnival by purchasing the excursion from Carnival.

123. By making representations, promoting, vouching for, contracting for and profiting from the excursion ticket contract, Carnival owed Plaintiff the non-delegable contractual duty to provide them with a reasonably safe excursion. *See, e.g., Bailey v. Carnival Corp.*, 369 F. Supp. 3d 1302 (S.D. Fla. 2019); *see also Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139 (S.D. Fla. 2016).

124. Carnival breached its non-delegable contractual or tort duty to provide a reasonably safe excursion by the following conduct:

a. Failure to recognize and advise of the travel advisory and uptick in violent crimes, including sexual assaults, in the Bahamas;

b. Failure to provide additional security personnel for the subject excursion;

c. Failure to provide a safe shore excursion in which the operator of the shore excursion had undergone a safety review.

125. As a direct result of the foregoing dangerous conditions to which Plaintiff was exposed and experienced, Plaintiff was injured about Plaintiff's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

LIPCON, MARGULIES & WINKLEMAN, P.A.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law and demands trial by jury.

Dated: August 5, 2024                              Respectfully submitted,

                                        By:   */s/ Elizabeth Irazabal*
                                              **JACQUELINE GARCELL** (FBN 104358)
                                              jgarcell@lipcon.com
                                              **ELIZABETH IRAZABAL** (FNB 1010997)
                                              eirazabal@lipcon.com
                                              LIPCON, MARGULIES
                                              & WINKLEMAN, P.A.
                                              2800 Ponce de Leon Blvd., Suite 1480
                                              Coral Gables, Florida 33134
                                              Telephone No.: (305) 373-3016
                                              Facsimile No.: (305) 373-6204
                                              *Attorneys for Plaintiff*